# BEFORE THE UNITED STATES JUDICIAL PANEL

## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: DEERE & COMPANY REPAIR SERVICES ANTITRUST LITIGATION | MDL DOCKET NO. 3030 |

## RESPONSE OF PLAINTIFF SAMANTHA CASSELBURY IN OPPOSITION TO DEERE & COMPANY'S MOTION TO TRANSFER RELATED CASES FOR CONSOLIDATED PRETRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407

Plaintiff Samantha Casselbury respectfully submits this response in opposition to Deere & Company's Motion to Transfer Related Cases for Consolidated Pretrial Proceedings Pursuant to 28 U.S.C. § 1407 (ECF No. 1). Plaintiff Casselbury supports centralization of the Related Actions in the Central District of Illinois before the Honorable Sara Darrow.

### INTRODUCTION

Defendant Deere & Co. ("Deere"), the largest agricultural machinery company in the world, sold tractors with onboard central computers known as engine control units, or "ECUs" to thousands of customers. These ECU's enabled Deere to monopolize the market for repair and maintenance services of its tractors, thereby shutting out owners and independent repair shops from accessing the necessary resources to repair Deere tractors.

*Casselbury v. Deere & Co.*, No. 4:22-cv-04049 (C.D. Il.), is one of nine actions alleging Deere's actions violate antitrust laws. Plaintiff Casselbury agrees that centralization is appropriate pursuant to 28 U.S.C. § 1407 but seeks transfer of the cases listed in the Schedule of Actions filed concurrently herewith (collectively, "the Related Actions"), as well as any tag-along cases subsequently filed involving similar facts or claims, to the U.S. District Court for the Central District of Illinois for coordinated or consolidated proceedings.

1

The Central District of Illinois is the transferee district best suited to take on this multidistrict litigation because Deere is headquartered in Moline, Illinois, in the Central District of Illinois, and has been since 1848. Relevant documents and witness will be found there, and it is where corporate decisions were ultimately made that led to the alleged monopolization and tying. While Deere's monopolization and tying may have affected owners of tractors throughout the country, it was caused by the actions of Deere's employees who are located in the Central District of Illinois. Thus, Plaintiff respectfully requests that this Panel grant her Motion and transfer and centralize all related actions to the Central District of Illinois.

## BACKGROUND OF THE LITIGATION

The Related Actions arise from the same set of operative facts. All plaintiffs allege that Defendant Deere deliberately monopolized the market for repair and maintenance services of its tractors with ECUs and illegally tied the sale of Deere Repair Services to Deere's Tractors. Owners of these tractors historically had the ability to repair and maintain their own tractors as needed or had the option to bring their tractors to an independent mechanic. However, newer generations of its tractors require proprietary software and associated repair tools (collectively referred to as "Software") to perform or complete many repairs. For example, an owner of a Deere Tractor may be able to replace the transmission on their equipment, but that Tractor will not operate unless proprietary Deere Software "approves" the newly-installed part. An owner of agricultural equipment or mechanic may have the necessary mechanical parts, knowledge, and the skill to repair a Tractor, but without access to the Software, the repair is not recognized by the Tractor's ECU, making the repair ineffective and the Tractor still unable to function properly.

In addition, Deere's network of highly-consolidated independent dealerships (the "Dealerships") has allowed Deere to corner the Deere Repair Services Market. The Dealerships

are not permitted through their agreements with Deere to provide owners of agricultural equipment or repair shops with access to the same software and repair tools the Dealerships have. And Deere forced the Dealerships to consolidate to eliminate inter-brand competition for Repair Services. As a result of shutting out owners of agricultural equipment and independent repair shops from accessing the necessary resources for repairs, Deere and the Dealerships have cornered the Deere Repair Services Market in the United States for Deere-branded agricultural equipment controlled by ECUs and have derived supra-competitive profits from the sale of repair and maintenance services.

The Related Actions all have common legal issues too. Each Related Action alleges that Deere deliberately monopolized the market for repair and maintenance services of its tractors with ECUs. Each Related Action pleads antitrust violations against Deere. Each Related Action generally seeks certification of similar classes. And each Related Action seeks similar relief.

## ARGUMENT

The Related Actions filed against Deere all assert the deliberate monopolization of the market for repair and maintenance services of its tractors with ECUs as well as the illegal tying of the sale of Deere Repair Services to Deere's Tractors. Coordination of these Related Actions is necessary to avoid duplicate discovery, promote just and efficient conduct of these cases, and prevent inconsistent rulings. Transfer to the Central District of Illinois will bring the Related Actions to a centralized court that is located in the same district as Deere's international headquarters.

I.     **The Related Actions are Appropriate for Transfer and Coordination Pursuant to 28 U.S.C. § 1407.**

Actions alleging common questions of fact may be transferred and consolidated or coordinated pursuant to Section 1407, if transfer will facilitate the convenience of the parties and

witnesses and will promote the just and efficient conduct of the transferred cases. *See* 28 U.S.C. § 1407. Typically, the Panel considers four factors when determining whether to transfer a case under Section 1407:

1. the elimination of duplication in discovery;

2. the avoidance of conflicting rules and schedules;

3. the reduction of litigation cost; and

4. the conservation of time and effort of the parties, attorneys, witnesses, and courts.

*See* Manual for Complex Litigation (Fourth) § 20.131 (2004) (citing *In re Plumbing Fixture Cases*, 298 F. Supp. 484 (J.P.M.L. 1968)). Each of these factors favors transfer and consolidation of the cases filed against Deere.

## A. The Actions Concern One or More Common Question of Fact.

Consolidation is appropriate if the Related Actions present common questions of fact. *See, e.g.*, *In re Delta Dental Antitrust Litig.*, 433 F. Supp. 3d 1358, 1359 (J.P.M.L. 2020) (consolidating the related actions because they "share factual questions," "uniformly contend" violations of the Sherman Antitrust Act, and had overlapping nationwide and state classes); *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 355 F. Supp. 3d 1382 (J.P.M.L. 2019) (centralizing antitrust drug cases due to, among other things, "common questions of fact"). The Related Actions here all arise from Deere deliberately monopolizing the market for repair and maintenance services of its tractors with ECUs and illegally tying Deere Repair Services to Deere's Tractors. The Related Actions all allege antitrust violations under the Sherman Act. And each Complaints generally seek certification of similar classes. Thus, the "common questions of fact" criterion is satisfied pursuant to Section 1407(a).

## B. Duplicate Discovery Will Occur Without Transfer and Consolidation.

907274.1

Because the Related Actions arise from the same set of operative facts, the parties will engage in duplicative discovery if the Related Actions are not transferred and consolidated. The plaintiffs will need to depose the same persons and seek the same documents from Deere. Deere will raise the same defenses, argue the same class certification and discovery objections, seek the same protective orders, and assert the same privileges in each case. Accordingly, consolidation of the Related Actions will permit the parties to coordinate their efforts in a single proceeding, thereby promoting efficiency, preserve judicial resources, and minimize the overall expense for the parties and witnesses. *See In re Lidoderm Antitrust Litig.*, 11 F. Supp. 3d 1344, 1345 (J.P.M.L. 2014) ("Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary." (citing *In re Niaspan Antitrust Litig.*, 971 F. Supp. 2d 1346, 1347 (J.P.M.L. 2013)); *In re Celexa and Lexpro Marketing and Sales Practices Litigation*, 652 F. Supp. 2d 1377, 1377 (J.P.M.L. 2009) (same). Thus, the "duplicative discovery" and "reduction of cost" criteria are satisfied pursuant to Section 1407(a).

### C.  Consolidation and Transfer Will Prevent Conflicting Rulings.

When evaluating if consolidation and transfer of related actions is appropriate, the Panel considers possible inconsistent rulings on pretrial issues because of possible *res judicata* or collateral estoppel effects on other cases. *See In re Enron Sec. Derivative & ERISA Litig.*, 196 F. Supp. 2d 1375, 1376 (J.P.M.L. 2002) (granting a transfer and consolidation in part to avoid conflicting pretrial rulings, particularly with respect to questions of class certification); *In re Piper Aircraft Distrib. Sys. Antitrust Litig.*, 405 F. Supp. 1402, 1403-04 (J.P.M.L. 1975) ("matters concerning class certification should be included in the coordinated or consolidated pretrial proceedings in order to prevent inconsistent rulings and promote judicial efficiency"). Because the

factual and legal allegations are substantially similar in each of the Related Action, there is a greater possibility of conflicting pretrial rulings. In addition, because the allegations are similar, Deere will assert the same defenses in opposition to the plaintiffs' claims, creating another risk for inconsistent rulings. Accordingly, transfer and consolidation of the Related Actions is appropriate.

## II.    The Central District of Illinois is the Appropriate Transferee Forum.

Plaintiff Casselbury respectfully submits that the Panel should consolidate these cases in the Central District of Illinois. The selection of an appropriate transferee forum depends greatly on the specific facts and circumstances of the litigation being considered for coordination and involves a "balancing test based on the nuances of a particular litigation," that considers several factors. *See* Robert A. Cahn, *A Look at The Judicial Panel on Multidistrict Litigation*, 72 F.R.D. 211, 214 (1977). Among the factors to be assessed are the nexus between the case and the proposed transferee district, including (1) the location of the parties, witnesses and documents; (2) the respective caseloads of the proposed transferee district courts; (3) the accessibility of the proposed transferee district to parties and witnesses; and (4) the familiarity and expertise of the transferee district with the underlying issues present in the litigation. *See In re Aggrenox Antitrust Litig.*, 11 F. Supp. 3d 1342, 1343 (J.P.M.L. 2014); *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. and Sales Practices Litig.*, 844 F. Supp. 2d 1380, 1380 (J.P.M.L. 2012); *In re Cardiac Devices Qui Tam Litig.*, 254 F. Supp. 2d 1370, 1373 (J.P.M.L. 2003).  These factors indicate that the Central District of Illinois is the appropriate transferee venue for the centralization of the Related Actions.

### A.    The Central District of Illinois Best Serves the Convenience of the Parties and Witnesses.

Transfer of all Related Actions to the Central District of Illinois best serves the convenience of the parties and witnesses because Deere is headquartered there, and it is the location where discovery

related to the antitrust violations is likely to be. *See In re Google Antitrust Litig.*, 521 F. Supp. 3d 1358, 1360 (J.P.M.L. 2021) (transferring actions to Northern District of California, in part, because defendant's headquarters were in the district and, "[t]hus the primary witnesses and documentary evidence on the common factual issues likely will be located in this district"); *see also In re Diisocyanates Antitrust Litig.*, 341 F. Supp. 3d 1376, 1378 (J.P.M.L. 2018) (same).

In Deere's Motion to Transfer Related Cases for Consolidated Pretrial Proceedings Pursuant to 28 U.S.C. § 1407, it argues the Northern District of Illinois is "the most convenient forum for the parties and the witnesses" because "[m]any key witnesses and documents are likely located at Deere's headquarters in Moline, Illinois, which is within the Northern District of Illinois and only 163 miles (less than a three-hour drive) from Chicago." But Deere's headquarters neither fall within the Northern District of Illinois, nor is the Northern District of Illinois the closest federal district court to Deere's headquarters. Deere's international headquarters are located 3.4 miles away from courthouse for the Central District of Illinois in Rock Island, Illinois and 4.1 miles away from the courthouse's temporary location in Davenport, Iowa.[1] Because, as Deere acknowledges, ""[m]any key witnesses and documents are likely located at Deere's headquarters," the convenience of the parties and witnesses would be much better served by a ten minute drive to and from Davenport or Rock Island, than a nearly three hour drive to Chicago. Deere also has major factories producing the products at issue in these cases in the Central District of Illinois: large combine harvesters are produced in East Moline, Illinois, and Deere also has an internal platform factory and a planting equipment factory in Moline, along with the Davenport Works factory across the river in Davenport. Finally, the John Deere Technology Innovation Center is located in Urbana, Illinois, also in the Central District.

---

[1] Central District of Illinois has courthouses in Springfield and Peoria as well. Springfield is 154 miles from Deere's headquarters and Peoria is 93 miles from Deere's headquarters. Both courthouses are closer than Chicago, which is 166 miles from Deere's headquarters.

In addition, all plaintiffs in the Related Actions would have easy access to Rock Island or Davenport through the Quad Cities International Airport, which serves Delta, American, United, and Allegiant airlines, as well 775,000 passengers annually. *See In re: Lidoderm Antitrust Litig.*, 11 F. Supp. 3d 1344, 1345 (J.P.M.L. 2014) (selecting transfer forum based in part on the fact that it "likely will be the most convenient for the greatest number of parties in this litigation."). Rock Island and Davenport also have adequate hotel rooms within a short distance of the courthouse.[2] Accordingly, for these reasons, the Panel should find the Central District of Illinois is the appropriate transferee forum.

**B.      The Central District of Illinois is Better Positioned to Efficiently Adjudicate the Consolidated Actions.**

The Central District of Illinois also has the resources and capacity that the coordinated docket will require. The Panel's March 16, 2022 Pending MDL Report shows that there are currently no MDLs pending within the district, while the Northern District of Illinois, Deere's proposed transferee venue, has fourteen pending MDLs.[3] Accordingly, the Central District of Illinois is the more appropriate transferee forum because it will not disproportionately bear the burden of an assignment. *See In re Bard IVC Filters Prods. Liab. Litig.*, 122 F. Supp. 3d 1375, 1377 (J.P.M.L. 2015) (transferring MDL to the District of Arizona, in part, because it "is not burdened by many MDLs").

The Central District of Illinois also has a greater capacity to devote time and effort to a consolidated matter because it has a lighter caseload than the Northern District of Illinois. The Central

---

[2]      *See, e.g.,*   https://theaxismoline.com/   (last accessed   Mar.   21,   2022); https://www.hilton.com/en/hotels/mlididt-doubletree-davenport/ (last accessed Mar. 21, 2022).

[3] *See* https://www.jpml.uscourts.gov/pending-mdls-0 (last accessed Mar. 21, 2022).

District of Illinois had 1,711 filings in 2021 compared to the 8,316 in the Northern District of Illinois.[4] The Central District of Illinois had 2,196 pending cases in 2021 compared to the 12,341 in the Northern District of Illinois.[5] And, as of December 31, 2021, only 9.8% of the civil cases in the Central District of Illinois are over 3 years old compared to the 17.6% in the Northern District of Illinois.[6] *See* D. Herr, *Multidistrict Litigation Manual: Practice Before the Judicial Panel on Multidistrict Litigation* § 6:17 at 210-11 (2008) ("The percentage of cases over three years old is an especially useful basis for comparing the various court dockets.").

Further, the Central District of Illinois has seasoned jurists capable of steering this litigation. Chief United States District Court Judge Sara Darrow sits in the Rock Island courthouse of the Central District of Illinois and is an efficient and capable jurist. In fact, Judge Darrow has only nine cases pending over three years, while Deere's proposed transferee judge, the Honorable Martha M. Pacold of the Northern District of Illinois, has eighty-eight cases pending over three years.[7] The other Central District of Illinois judges sitting in Peoria and Springfield are equally up to the task. These six jurists are all seasoned and only have a combined 59 cases pending over three years.[8] Thus, the Central District of Illinois has the capacity and the specific judicial resources that this docket will require and is well positioned to accept transfer of the actions.

---

[4] *U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (December 31, 2021),* https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2021/12/31-1 (last accessed Mar. 21, 2022).

[5] *Id.*

[6] *Id.*

[7] *See U.S. District Courts—Civil Cases Pending More Than Three Years—as of September 30, 2021,* https://www.uscourts.gov/statistics/table/cjra-7/civil-justice-reform-act-cjra/2021/09/30 (last accessed Mar. 21, 2022).

[8] *Id.*

907274.1

**C.**    **The Related Actions Should Not Be Transferred to the Northern District of Illinois Solely Because the First-Filed Case is Located There.**

The only substantive argument Deere makes in favor of transferring the Related Actions to Northern District of Illinois is that the first-filed case is located there.  But all of the Related Actions have been filed in a little over the last three months and none have progressed substantially in discovery.  Because these cases are roughly on the same track, and no one case is more procedurally advanced than the others, the fact that a case was filed in one location a few weeks before another is immaterial and does not weigh in favor of transfer to the Northern District of Illinois, an overburdened forum that is not home to Deere.

## CONCLUSION

For the reasons set forth herein, Plaintiff Casselbury respectfully requests that the Panel centralize the Related Actions pursuant to Section 1407 and transfer all Related Actions to the Central District of Illinois for coordinated pretrial proceedings.

**LITE DEPALMA GREENBERG & AFANADOR, LLC**

Dated: March 22, 2022          */s/ Mindee J. Reuben*

Mindee J. Reuben
Steven J. Greenfogel
1835 Market Street, Suite 2626
Philadelphia, PA 19096
Telephone: 267-314-7980
mreuben@litedepalma.com
sgreenfogel@litedepalma.com

**LITE DEPALMA GREENBERG & AFANADOR, LLC**
Joseph J. DePalma
Jeremy N. Nash
Catherine B. Derenze
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: 973-623-3000
jdepalma@litedepalma.com
jnash@litedepalma.com
cderenze@litedepalma.com

**THE VAN WINKLE LAW FIRM**
Larry S. McDevitt
David M. Wilkerson
11 N. Market Street
Asheville, NC 28801
Telephone: 828-258-2991
lmcdevitt@vwlawfirm.com
dwilkerson@vwlawfirm.com

907274.1