BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| **IN RE: DEERE REPAIR SERVICES ANTITRUST LITIGATION**<br><br>Relates to:<br><br>*Plum Ridge Farms, Ltd., et al. v. Deere & Co. (d/b/a John Deere),* 3:22-cv-50030 (N.D. Ill)<br><br>*Eagle Lake Farms Partnership, et al. v. Deere & Co. (d/b/a John Deere),* 3:22-cv-50078 | **MDL DOCKET No. 3030** |

**NORTHERN DISTRICT OF ILLINOIS – WESTERN DIVISION PLAINTIFF PLUM RIDGE FARMS, LTD.'S AND PLAINTIFF EAGLE LAKE FARMS PARTNERSHIP'S RESPONSE TO MOTION TO TRANSFER**

1

Plaintiff Plum Ridge Farms, Ltd. ("Plum Ridge Farms") and Plaintiff Eagle Lake Farms Partnership ("Eagle Lake") (collectively, "Plum Eagle") submits this brief in support of transfer and consolidation pursuant to 28 U.S.C. § 1407 to the United States District Court for the Northern District of Illinois ("NDIL") and supports transfer to the Honorable Iain D. Johnston of the Western Division of the NDIL.[1]

**INTRODUCTION**

There are currently four related antitrust actions ("Related Actions") pending against Deere & Co. d/b/a John Deere ("Deere") in the United States District Court for the Northern District of Illinois. The central claim to each Related Action is that Deere deliberately monopolized the repair and maintenance market for John Deere brand tractors and equipment in violation of the Sherman Act. Plum Eagle agrees with Deere's position that it is in the best interests of judicial economy and all of the involved parties to consolidate the pretrial proceedings in a single, geographically convenient forum close to Deere's global headquarters in Moline, Illinois. Plum Eagle, however, disagrees with what the most geographically convenient forum is for Deere and all other parties. For the reasons stated herein, the most geographically convenient forum is the United States District Court for the Northern District of Illinois – Western Division.

Because the Related Actions contain identical factual questions, and legal issues, transfer under 28 U.S.C. § 1407 would be most convenient for the parties and would promote efficient use of judicial and party resources. Therefore, Plum Eagle respectfully requests that the Panel transfer and consolidate the Related Actions, as well as any subsequent cases raising similar facts or claims,

---

[1] *Plum Ridge Farms, Ltd., et al. v. Deere & Co. (d/b/a John Deere),* No. 3:22-cv-50030 (N.D. Ill.) (filed 2/7/2022); *Daniel Brown, D/B/A Otsego Forestry Services, et al. v. Deere & Co. (d/b/a/ John Deere),* No. 3:22-cv-50039 (N.D. Ill.) (filed 2/11/2022); *Eagle Lake Farms Partnership v. Deere & Co. (d/b/a John Deere),* No. 3-22-cv-50078 (N.D. Ill.) (filed 3/11/2022)

2

before the Honorable Iain D. Johnston of the United States District Court for the Northern District of Illinois – Western Division.

As of the time of this filing, Plum Eagle and Deere have not taken any steps to pursue alternatives to centralization. Discovery has not been initiated by either party and no substantive motions have been filed. Neither Plum Eagle nor Deere have sought a Section 1404 transfer.

## BACKGROUND AND STATUS OF LITIGATION

Deere is a manufacturer of farming equipment. Recently Deere began using proprietary software in many models of the farming equipment it manufactures. The software prevents the end-consumer from being able to diagnose and fix mechanical malfunctions with the equipment. Plaintiffs in all nine Related Actions claim that Deere has monopolized the market for repair and maintenance services for the equipment that utilizes the proprietary software mentioned above.

All nine of the Related Actions have significant factual overlap. All of the complaints are against Deere. The legal theories and causes of action all stem from the allegation that Deere has monopolized the repair and maintenance service market in violation of the Sherman Act. All of the Related Actions are in the early stages of litigation. As of today, no substantive action has been taken by any of the courts. No discovery has been initiated in any of the Related Actions, and no substantive motions have been filed in any of the Related Actions.

## LEGAL STANDARD

Transfer and consolidation is appropriate when actions pending in different judicial districts involve similar questions of fact such that consolidating pretrial proceedings would "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Section 1407 provides, in part:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or

consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

28 U.S.C. § 1407(a).

## ARGUMENT

### I. TRANSFER TO A SINGLE DISTRICT FOR CENTRALIZED PRETRIAL PROCEEDINGS IS APPROPRIATE UNDER 28 U.S.C. § 1407

Plum Eagle supports consolidation pursuant to 28 U.S.C. § 1407, which provides that "[w]hen civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a). This Panel shall order such transfer "upon its determination that transfers for such proceedings will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions." *Id.*

Centralization of the Related Cases under Section 1407 serves the best interests of the parties, as it will eliminate duplicative discovery; prevent inconsistent pretrial ruling, including with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary. *In re Fisher-Price Rock 'N Play Sleeper Marketing, Sales Practices, and Products Liability Litigation,* 412 F.Supp.3d 1357, 1359 (U.S.Jud.Pan.Mult.Lit., 2019).

#### A. THE RELATED ACTIONS INVOLVE COMMON QUESTIONS OF FACT

All Related Actions arise from the same common facts, and these factual issues and related discovery will be at the core of all Related Actions. Likewise, the Related Actions involve common issues of law and are brough on behalf of nearly identical plaintiff classes. Centralization of nearly identical class actions has long been favored. *In re First Nat. Bank, Heavener, Okl. (First Mortg. Revenue Bonds) Securities Litigation,* 451 F.Supp. 995, 997 (Jud.Pan.Mult.Lit., 1978) ("Because

4

these actions have been brought on behalf of the same plaintiff class, we emphasize that it is desirable to have a single judge oversee the class action issues in both actions to avoid duplicative efforts in this areas.") *In re Fisher-Price Rock 'N Play Sleeper Marketing, Sales Practices, and Products Liability Litigation,* 412 F.Supp.3d 1357, 1359 (U.S.Jud.Pan.Mult.Lit., 2019).

The risk of conflicting class action determinations has long been an important factor favoring transfer of an action under Section 1407. *See, e.g., In re Texas Gulf Sulphur Securities Litigation,* 344 F.Supp. 1398 (J.P.M.L. 1972); *In re 7-Eleven Franchise Antitrust Litigation,* 358 F.Supp. 286, 287 (Jud.Pan.Mult.Lit. 1973). Here, such risk exists with respect to the nearly identical antitrust class cases asserting violations of the Sherman Act.

### B. CENTRALIZATION WILL SERVE "THE CONVENIENCE OF THE PARTIES AND WITNESSES" AND "PROMOTE THE JUST AND EFFICIENT CONDUCT OF THE ACTIONS"

The Panel will order transfer where it would "eliminate duplicative discovery; prevent inconsistent pre-trial rulings (particularly with respect to the issue of class certification); and conserve the resources of the parties, their counsel and the judiciary." *In re U.S. foodservice, Inc., Pricing Litig.,* 528 F.Supp.2d 1370, 1371 (J.P.M.L. 2007). Because each action is based upon similar facts, plaintiffs in each of the Related Actions are, in turn, likely to seek overlapping discovery. *See In re Auto Body Shop,* 2014 WL 3908000, at *1-2 (J.P.M.L. 2014) (noting that transfer was appropriate to eliminate duplicative discovery when the actions shared a common factual core).

#### 1. CENTRALIZATION WILL REDUCE DISCOVERY BURDENS

Plaintiffs in the Related Actions necessarily will seek similar discovery from Deere to develop their common allegations and legal theories. The benefits to Deere are obvious as well, as they would not need to submit to repetitive and duplicative depositions, document discovery,

5

discovery-related motion practice, and class certification briefing. *See, e.g., In re Pilot Flying J Fuel Rebate Contract Litig. (No. II),* 11 F.Supp.3d 1351, 1352 (J.P.M.L. 2014); *In re Fresh & Processed Potatoes Antitrust Litig.,* 744 F.Supp.2d 1381, 1382 (J.P.M.L. 2010).

### 2. CENTRALIZATION WILL AVOID INCONSISTENT RULINGS

That the Related Actions are putative class actions only strengthens the argument for transferring them for coordination or consolidation in a single forum. "The need to eliminate" the risk of inconsistent class certification rulings "presents a highly persuasive reason favoring transfer under Section 1407." *In re Roadway Exp., Inc. Employment Practices Litig.,* 384 F.Supp. 612, 613 (J.P.M.L. 1974). *See also In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.,* 26 F.Supp.3d 1394, 1395 (J.P.M.L. 2014) ("Centralization will…prevent inconsistent pretrial rulings (particularly as to class certification)…"); *In re Am. Family Mut. Ins. Co. Overtime Pay Litig.,* 416 F.Supp.2d 1346, 1347 (J.P.M.L. 2006) (ordering transfer "in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings, particularly with respect to class certification…"). In short, this is an ideal circumstance for a transfer order pursuant to Section 1407.

### 3. ESTABLISHING AN MDL NOW IS THE MOST EFFICIENT WAY TO ADVANCE THE LITIGATION

The number of Related Actions continues to grow in this case. The number of Related Actions when Deere filed its Motion to Transfer was six. Now there are nine Related Actions. This number is likely to continue going up. Therefore, it is appropriate to consolidate and centralize proceedings now. *In re Oxycontin Antitrust Litig.,* 314 F.Supp.2d 1388, 1390 (J.P.M.L. 2004) ("Given that the number of related actions continues to grow, along with the potential need for additional motions to transfer venue, we find that transfer under Section 1407 is warranted.").

## II. THE ACTIONS SHOULD BE TRANSFERRED TO JUDGE IAIN D. JOHNSTON IN THE NORTHERN DISTRICT OF ILLINOIS – WESTERN DIVISION

The United States District Court for the Northern District of Illinois – Western Division is the proper forum for the consolidation of the pretrial proceedings. Four of the pending actions against Deere were filed in the Northern District of Illinois. Three of those were filed in the Western Division. Only one was filed in the Eastern Division. Judge Iain D. Johnston of the Western Division is presiding over *Plum Ridge Farms, Ltd. v. Deere & Co., Daniel Brown, D/B/A Otsego Forestry Services v. Deere & Co.,* and *Eagle Lake Farms Partnership v. Deere & Co.*

In determining the proper transferee forum, the Panel considers several factors. These factors include the experience, skill, and caseloads of the available judges; pending cases in the jurisdiction; the convenience of the forum to all parties; the location of the witnesses and evidence; accessibility of the district; and cost considerations for the parties. *See In re Jamster Marketing Litigation,* 427 F.Supp.2d 1366, 1368 (Jud.Pan.Mult.Lit. 2006); *In re Preferential Drug Products Pricing Antitrust Litigation,* 429 F.Supp. 1027, 1029 (Jud.Pan.Mult.Lit. 1977). Typically, receiving a significant weight is the central location of documents and witnesses. This location generally provides the most convenient forum for the litigation.

While Defendant seeks transfer to the Northern District of Illinois- Eastern Division, no party disputes that the Western Division is not a proper venue. "Venue is proper in either division because the Northern District of Illinois has no local rule requiring divisional venue-*i.e.,* cases occurring in the Northern District may be brought in eather the Eastern or Western Division." *Rorah v. Peterson Health Care,* No. 13 C 1827, 2013 WL 3389063 at *2 (N.D.Ill. July 8, 2013). In this case, three of four plaintiffs choose to file their case in the Western Division.

Here, the United States District Court for the Northern District of Illinois – Western Division in Rockford, Illinois is the most convenient forum for the parties and the witnesses. Deere

correctly points out the fact that many key witnesses and documents are likely located at Deere's global headquarters in Moline, Illinois. However, Deere makes the assertion that the Eastern Division is the most convenient forum despite the Eastern Division being 163 miles (and approximately three-hour drive) from Deere's Moline, Illinois global headquarters while the Western Division is only 106 miles (and less than a two-hour drive) from Deere's Moline, Illinois global headquarters. As Deere indicates in its Motion to Transfer, this weighs heavily in favor of centralizing the litigation in the Western Division. *See, e.g., In re Equifax, Inc.,* 289 F.Supp.3d 1322 (Jud.Pan.Mult.Lit. 2017) (transferring actions to the Northern District of Georgia, where the main defendant is headquartered as "relevant documents and witnesses thus likely will be found there."); *In re Vytorin/Zetia Mktg.,* 543 F.Supp.2d 1378 (Jud.Pan.Mult.Lit. 2008) (centralizing cases in the District of New Jersey because two of the defendants had their corporate headquarters in New Jersey and, thus, relevant discovery could be found there); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.,* 559 F.Supp.2d 1405 (Jud.Pan.Mult.Lit. 2008) (finding District of Maine was appropriate transferee district because, among other reasons, defendant had its headquarters in that district and, thus, relevant documents and witnesses would be found there); *In re Wash. Mut., Inc.,* 536 F.Supp.2d 1377 (Jud.Pan.Mult.Lit. 2008) (centralizing litigation in Western District of Washington where defendant was headquartered there and witnesses and documents were located there).

In addition to the proximity to Deere's Moline, Illinois global headquarters and, naturally, evidence and witnesses, the Western Division is centrally located in the United States. The Related Actions all purport to represent class members located throughout the United States. Therefore, the centralized location of the Northern District of Illinois – Western Division is appropriate. *See, e.g., In re Realnetworks, Inc., Privacy Litigation,* 2000 U.S. Dist. LEXIS 1458, *4

(Jud.Pan.Mult.Lit. 2000) (transferring actions to the Northern District of Illinois as most convenient, noting that "the geographic location of the Northern District of Illinois makes it a convenient forum for parties located throughout the United States.").

The United States District Court for the Northern District of Illinois – Western Division in Rockford allows for easy access for all litigants and witnesses. There are two airports that are convenient for travel to and from Rockford. First, Rockford has its own airport, Chicago Rockford International Airport. Second, Chicago's O'Hare International Airport is only a one-hour drive from the Western Division. Although O'Hare International Airport is geographically closer to the Eastern Division, driving time can exceed one hour to the Eastern Division during peak travel times due to the heavy city traffic in Chicago. Costs associated with the hotels and parking are also much more substantial in Chicago than Rockford.

The Western Division in Rockford allows for easy access for all litigants and witnesses. Rockford has a significant number of hotels that are very reasonably priced. In 2020, a new Embassy Suites by Hilton was opened in Rockford, Illinois.[2] The hotel has 160 rooms, with restaurants and lounges.[3] As of March 18, 2022, the cost of a basic room at the Embassy Suites in Rockford is $129/night.[4] The costs associated with parking, fuel, dining, lodging, etc. in Rockford are significantly less than those in Chicago.[5] The Western Division is also the most logical forum

---

[2] *Downtown Rockford hotel hopes first impression is 'wow'"*, https://www.rrstar.com/story/business/2020/06/27/downtown-rockford-hotel-hopes-first-impression-is-rsquowowrsquo/114283958/ (Last visited 3/8/2022).

[3] *Id.*

[4] Based on a one-night stay on Tuesday, May 10, 2022. https://www.hilton.com/en/book/reservation/rooms/?ctyhocn=RFDMSES&arrivalDate=2022-05-10&departureDate=2022-05-11&room1NumAdults=1&usePoints=false&brandCode=ES&inputModule=HOTEL_SEARCH&ohwDeepLinking=true (Last visited 3/18/2022).

[5] According to Booking.com, in Chicago, the average cost of one night in a 3-star hotel is $141, the average cost of one night in a 4-star hotel is $193, and the average cost of a 5-star hotel is $406.
https://www.booking.com/city/us/chicago.html (last visited 3/8/2022).
According to Booking.com, in Rockford, the average cost of one night in a 3-star hotel is $115 and the average cost of one night in a 4-star hotel is $148.

9

between the two Northern District of Illinois divisions because three of the nine Related Actions are pending in the Western Division. *See, e.g., In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.,* 560 F.Supp.2d 1348, 1349 (Jud.Pan.Mult.Lit. 2008).

The Western Division has more than sufficient resources to effectively manage this multidistrict litigation. Judge Iain D. Johnston is not currently presiding over any multidistrict matters. There are currently fourteen pending multidistrict litigation cases in the United States District Court for the Northern District of Illinois.[6] All fourteen of these are in the Eastern Division. Allowing the Western Division of the Northern District of Illinois to preside over this multidistrict litigation will give the Western Division and Judge Iain D. Johnston the opportunity to demonstrate their capabilities on many levels.

The courthouse for the Western Division, the Stanley J. Roszkowski U.S. Courthouse, is also a well-equipped courthouse, capable of accommodating this multidistrict litigation. The Stanley J. Roszkowski U.S. Courthouse was built in 2011[7], has ample room to accommodate all

---

https://www.booking.com/city/us/rockford.html#:~:text=How%20much%20does%20it%20cost,on%20Booking.com%20prices) (last visited 3/8/2022).

According to ParkChicago, street parking in the loop (where the Eastern Division court is located) costs $7.00/hour from 8:00am to 9:00pm and $3.50/hour from 9:00pm to 8:00am. https://parkchicago.com/rates-hours/ (last visited 3/8/2022). Street parking can be difficult to find and parking garages charge even higher rates. https://en.parkopedia.com/parking/chicago/?arriving=202203081200&leaving=202203081400 (last visited 3/8/2022).

According to Parkopedia, parking is free almost everywhere throughout Rockford. https://en.parkopedia.com/parking/building/rockford-city-hall-winnebago-il/?arriving=202203081200&leaving=202203081400 (last visited 3/8/2022).

Additionally, the average cost of dining is significantly less in Rockford than Chicago. The average restaurant prices are 17.67% higher in Chicago than Rockford, the average cost of a bottled water is ~26.85% higher in Chicago than Rockford, and gasoline is ~23.6% higher in Chicago than Rockford. https://www.numbeo.com/cost-of-living/compare_cities.jsp?country1=United+States&country2=United+States&city1=Chicago%2C+IL&city2=Rockford%2C+IL&tracking=getDispatchComparison (last visited 3/8/2022).

[6] https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-March-16-2022.pdf (last visited 3/22/2022).

[7] https://www.gsa.gov/about-us/regions/welcome-to-the-great-lakes-region-5/buildings-and-facilities/illinois/stanley-j-roszkowski-us-courthouse (last visited 3/18/2022).

necessary parties to this matter,[8] and is equipped with excellent technology.[9] According to the designers of the Rockford courthouse, "[t]he new Stanley J. Roszkowski U.S. Courthouse in Rockford, Illinois, was cited and planned with an eye to the future, addressing evolving needs and the potential for future expansion."[10] Judge Iain D. Johnston is more than qualified to hear this multidistrict litigation case. Although Judge Iain D. Johnston was only recently appointed as a district judge by President Trump, being commissioned in September 2020, he served as a United States Magistrate Judge of the United States District Court for the Northern District of Illinois from May 2013 to the time he started as a district judge.[11] Prior to joining the bench, Judge Iain D. Johnston dealt with numerous complex litigation matters in his practice. Judge Iain D. Johnston also works closely with Magistrate Judge Lisa A. Jensen, who became the first woman to serve as a United States Magistrate Judge in Rockford in 2019.[12] Judge Iain D. Johnston is therefore familiar with the Northern District of Illinois and has many years of experience in the district.

There is a disproportionate case load between Judge Martha M. Pacold and Judge Iain D. Johnston. For example, for the week of March 8, 2022, Judge Martha M. Pacold had a total of 25 hearings and/or rulings scheduled, while Judge Iain D. Johnston only had one hearing scheduled for that same period of time.[13] Judge Iain D. Johnston has the ability to take on a multidistrict litigation matter of this magnitude.

---

[8] The courthouse covers approximately 200,000 square feet, contains five courtrooms. https://www.ilnd.uscourts.gov/Pages.aspx?GWv81axJLewVPk7mI8oOh7Jk4O/51vr/#:~:text=Roszkowski%20U.S.%20Courthouse%20%2D%20Rockford%2C%20IL,Covering%20approximately%20200%2C000%20sq. (last visited 3/18/2022).

[9] Almost every courtroom in the Courthouse offers high definition presentation capacity, integrated evidence presentation equipment, and video conferencing capability. https://www.ilnd.uscourts.gov/Pages.aspx?Wsrh8mVweBtkCWu8DlGm87wN9Fs7aMC44dxh+5XRIzg= (last visited 3/18/2022)

[10] https://www.dewberry.com/projects/stanley-j-roszkowski-us-courthouse (last visited 3/18/2022)

[11] https://en.wikipedia.org/wiki/Iain_D._Johnston (last visited 3/9/2022)

[12] https://www.wifr.com/content/news/First-female-federal-judge-now-serving-in-Rockford-508605031.html (last visited 3/18/2022)

[13] See https://www.ilnd.uscourts.gov/judge-info.aspx?tdDC7jWNEcPS6Px28PZuWg== (last visited 3/8/2022) and https://www.ilnd.uscourts.gov/judge-info.aspx?Bt1LmR2QgBbCj2VD6w9tXA== (last visited 3/8/2022).

## CONCLUSION

For the reasons set forth more fully herein, Plum Eagle respectfully requests that the Panel consolidate and transfer the Related Actions, as well as any tag-along actions or other cases, such as may be subsequently filed in federal court asserting related or similar claims, to the United States District Court for the Northern District of Illinois – Western Division.


Dated: March 22, 2022                    Respectfully,


/s/ Robert M. Foote_____

Robert M. Foote, Esq. (3124325)
Kathleen C. Chavez, Esq. (6255735)
Matthew J. Herman, Esq. (6237297)
Elizabeth C. Chavez, Esq. (6323726)
Bret K. Pufahl, Esq. (6325814)
FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
10 W. State Street, Suite 200
Geneva, IL 60134
Tel. No.: (630) 232-7450
Fax No.: (630) 232-7452
Email: rmf@fmcolaw.com
kcc@fmcolaw.com
mjh@fmcolaw.com
ecc@fmcolaw.com
bkp@fmcolaw.com

Marc C. Gravino (6188531)
John J. Holevas (6193167)
WILLIAMSMCCARTHY LLP
P.O Box 219
Rockford, IL 61105
(815) 987-8936
mgravino@wilmac.com
jholevas@wilmac.com

***Attorneys for Plaintiff Plum Ridge Farms, Ltd.***

Robert M. Foote, Esq. (3124325)
FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
10 W. State Street, Suite 200
Geneva, IL 60134
Tel. No.: (630) 232-7450
Fax No.: (630) 232-7452
Email: rmf@fmcolaw.com

**GLANCY PRONGAY & MURRAY LLP**
Brian P. Murray (*Pro Hac* to be filed)
Lee Albert (*Pro Hac* to be filed)
Gregory Linkh (*Pro Hac* to be filed)
230 Park Avenue, Suite 358
New York, NY 10169
Tel: (212) 682-5340
Fax: (212) 884-0988
bmurray@glancylaw.com
lalbert@glancylaw.com
glinkh@glancylaw.com

John G. Emerson (*Pro Hac* to be filed)
**EMERSON FIRM, PLLC**
2500 Wilcrest Drive, Suite 300
Houston, TX 77042
Telephone: (800) 551-8649
Fax: (501) 286-4659
jemerson@emersonfirm.com


*Attorneys for Plaintiff Eagle Lake Farms Partnership*