**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: DEERE REPAIR SERVICES | MDL No. 3030 |

**RESPONSE TO DEFENDANT DEERE & CO.'S MOTION TO TRANSFER RELATED ACTIONS FOR CONSOLIDATED PRETRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407**

Plaintiff Forest River Farms ("Plaintiff") submits this response to Defendant Deere & Co.'s ("Deere") motion to transfer the related antitrust actions ("Related Actions") to a single district court for consolidated or coordinated pretrial proceedings, pursuant to 28 U.S.C. § 1407 and Judicial Panel on Multidistrict Litigation Rule 6.2(a).[1] Plaintiff agrees with Deere that the cases should be centralized and that the Northern District of Illinois is the best venue for this case. However, given the more favorable case load of the Northern District of Illinois's Western Division and for additional reasons stated further herein, Plaintiff requests that these Related Actions be transferred to and consolidated in the Northern District of Illinois's Western Division.

---

[1] At the time of Deere's filing, there were six Related Actions, but as of the date of this Response, there are now ten. They include the following: *Forest River Farms v. Deere*, 1:22-cv-00188 (N.D. Ill. E. D.); *Plum Ridge Farms v. Deere*, No. 3:22-cv-50030 (N.D. Ill. W.D.); *Brown v. Deere*, No. 3:22-cv-50039 (N.D. Ill. W.D.); *Eagle Lake Farms P'ship v. Deere*, No. 3:22-cv-50078 (N.D. Ill. W.D.); *Casselbury v. Deere*, No. 4:22-cv-04049 (C.D. Ill.); *Wells v. Deere*, No. 3:22-cv-00074 (N.D. Ala.) (bringing near-identical claims to the other Related Actions but on behalf of a proposed class consisting of Alabama and Tennessee persons and entities); *Underwood v. Deere*, 4:22-cv-0005 (E.D. Tenn.); *Ferrell v. Deere*, 5:22-cv-00157 (W.D. Okla.); *Hapka Farms, Inc. v. Deere*, 0:22-cv-00503 (D. Minn.); *Johnson v. Deere*, 1:22-cv-00047 (N.D. Miss).

**INTRODUCTION**

Each of the Related Actions contain similar allegations of anticompetitive conduct by Deere and similar legal theories. Each plaintiff in their respective Related Action alleges that Deere deliberately monopolized the market for repair and maintenance services of Deere-branded tractors and other equipment in violation of Sections 1 and 2 of the Sherman Act. As all Related Actions center around common questions of fact and law, transfer and consolidation are warranted.

Coordinating pretrial proceedings in a single forum would be far more efficient for the parties and the judiciary compared to the alternative of parallel litigation in multiple courts across the country. Eight of the ten Related Actions are class actions brought on behalf of a putative national class and all request identical injunctive relief. Furthermore, both the Western and Eastern divisions of the Northern District of Illinois are centrally located with respect to the Related Actions. Deere's motion for transfer and consolidation should therefore be granted but the coordinated MDL should be venued in the Western Division of the Northern District of Illinois before Judge Iain D. Johnston.

**BACKGROUND**

Deere is indisputably the largest player in the agricultural machinery market in the United States, manufacturing a wide range of tractors, combines, and other agricultural equipment. The Related Actions allege that Deere engaged in various forms of anticompetitive conduct to maintain their dominant market position and to collect and charge supracompetitive prices in the market for repair services for Deere-branded equipment.

Specifically, the Related Actions allege that newer generations of Deere's tractors, combines, and agricultural equipment with engine control units (ECUs) require proprietary

software and associated repair tools to diagnose and complete repairs. For example, an owner of a tractor may be able to physically replace the transmission on a tractor they own, but that tractor will not operate until proprietary software from Deere "approves" the newly-installed part.[2] A farmer or mechanic may have the necessary mechanical parts, knowledge, and the skill to repair a tractor, but without access to the software, the repair is not recognized by the tractor's ECU, making the repair ineffective with the tractor unable to function properly.[3]

All of the Related Actions allege Deere deliberately made the software and tools necessary to perform repairs on Deere agricultural equipment unavailable to individual owners and independent repair shops. By withholding necessary repair software and tools, Deere has succeeded in foreclosing competition in the multi-billion-dollar Deere Repair Services Market. Consequently, plaintiffs allege that competition in the Deere Repair Services Market has been restrained and as a result they have paid millions of dollars more for repair services than they would have paid in a competitive market.

The Related Actions are substantially similar to one another, both in fact and law. All name Deere as the sole named defendant and advance causes of action based on the theory that Deere monopolized the market for repair and maintenance services of Deere tractors, combines, and agricultural equipment with ECUs. All Related Actions allege violations of the Sherman Antitrust Act, including monopolization, attempted monopolization, conspiracy to monopolize, group boycott, unlawful tying, and unjust enrichment. All Plaintiffs seek nearly identical relief, including treble damages, permanent injunctive relief, pre and post judgment interest, and attorneys' fees.

---

[2] *See Forest River Farms v. Deere*, No. 1:22-cv-00188, at ¶ 4 (N.D. Ill. Jan. 12, 2022) (ECF No. 1).
[3] *Id.*

None of the plaintiffs in the Related Actions have undertaken discovery or filed any substantive motions.

The *Forest River Farms* complaint, filed January 12, 2022 in the Northern District of Illinois Eastern Division and assigned to Judge Martha M. Pacold, was the first case to allege these facts and advance these legal theories against Deere. The nine subsequently-filed complaints contain near identical allegations and claims and were filed in rapid succession.[4]

## ARGUMENT

I. **The Panel Should Transfer and Consolidate the Related Actions Pursuant to 28 U.S.C. § 1407.**

Transfer and consolidation is appropriate because of the substantially overlapping factual allegations in the ten Related Actions. Under 28 U.S.C. § 1407, when actions "involving one or more common questions of fact are pending in different districts," the Panel may transfer the cases to a single district for consolidated pretrial proceedings. 28 U.S.C. § 1407(a). The Panel "shall" order transfer and consolidation when it determines that a transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." *Id*. Here, these criteria are easily satisfied.

  A. **The Related Actions Involve Common Questions of Fact and Law.**

The Related Actions are deeply interrelated in terms of the allegations and proposed remedies. In addition to relating to a common course of conduct by Defendants that is alleged to be illegal under Sections 1 and 2 of the Sherman Act, among other statutes and causes of action,

---

[4] *Forest River Farms* (filed Jan. 12, 2022). *Wells* (Jan. 19, 2022), *Underwood* (Feb. 3, 2022), *Plum Ridge Farms* (Feb. 7, 2022), *Brown* (Feb. 11, 2022), *Ferrell* (filed Feb. 22, 2022), *Hapka Farms* (Feb. 28, 2022), *Eagle Creek Farms* (Mar. 12, 2022), *Casselbury* (Mar. 14, 2022), and *Johnson* (Mar. 15, 2022).

4

eight out of ten of the Related Actions are class actions that are nationwide in scope, and all of the Related Actions request similar injunctive relief.

Where antitrust class actions involve common questions of fact, this Panel has found that "centralization under Section 1407 will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation" and is "necessary in order to avoid duplication of discovery, prevent inconsistent or repetitive pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." *In re Visa/MasterCard Antitrust Litigation*, 295 F.Supp.2d 1379, 1380 (J.P.M.L. 2003). Although the allegations in each Related Action have minor variations, each Related Action rests on the same core factual allegations and legal theories alleged in the *Forest River Farms* action.

### B. Transfer Is Necessary to Coordinate and Avoid Inconsistent Rulings.

The resolution of the factual and legal issues in the Related Actions will have ramifications that are nationwide in scope and effect. Because nearly all the Related Actions are nationwide in scope, consolidation should occur so that lead counsel is appointed only once for the class. All Related Actions involve requests for injunctive relief, which should be adjudicated through consistent pre-trial rulings and procedures across the Related Actions.

The Panel has also repeatedly found consolidation particularly appropriate in antitrust class actions, in order to eliminate duplicative discovery and prevent inconsistent pretrial rulings. *See In re Libor-Based Fin. Instruments Antitrust Litig.*, 802 F. Supp. 2d 1380 (J.P.M.L. 2011); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 483 F. Supp. 2d 1353 (J.P.M.L. 2007); *In re Intern. Air Transp. Surcharge Antitrust Litig.*, 460 F.Supp.2d 1377 (J.P.M.L. 2006).

### C. Transfer Would Be Convenient for the Parties and Witnesses and Would Promote Judicial Efficiency.

The Related Actions should be consolidated to promote efficiency and reduce waste of both judicial and attorney resources. Given the near-identical factual and legal issues at stake, having attorneys litigating the same factual and legal issues simultaneously in front of multiple judges is unnecessary and inefficient. Furthermore, the Panel has found that the convenience requirement for consolidation or coordination is met when doing so would prevent duplicative discovery and inconsistent pretrial rulings. *See In re Commodity Exchange, Inc., Gold Futures & Options Trading Litig Gold*, 38 F. Supp. 3d 1394, 1395 (J.P.M.L. 2014) ("centralization will eliminate duplicative discovery . . . prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary.").

Centralizing the Related Actions for pretrial proceedings would prevent duplicative discovery related to evidence supporting plaintiffs' allegations of Deere's monopolistic conduct, unlawful tying, and group boycott. *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 24 F. Supp. 3d 1361, 1363 (J.P.M.L. 2014) (holding that "[c]entralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings (particularly with respect to class certification and preliminary injunctive relief); and conserve the resources of the parties, their counsel and the judiciary."); *In re Online DVD Rental Antitrust Litig.*, 609 F. Supp. 2d 1376, 1377 (J.P.M.L. 2009) ("These actions share factual questions arising out of allegations that defendants conspired to divide the online DVD rental market in violation of federal antitrust laws. Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary.").

II. **The Related Actions Should Be Transferred to and Consolidated in the Northern District of Illinois.**

A. **The Northern District of Illinois's Western Division Is a Proper Transferee Forum and is Convenient for the Parties and Witnesses.**

The Northern District of Illinois consists of two divisions—the Western Division based in Rockford and the Eastern Division based in Chicago. The Western Division of the Northern District of Illinois is well suited to oversee this complicated MDL. First, the Western Division is located in Rockford, a forum that would be convenient for the parties, witnesses, and their counsel. Deere's corporate headquarters are in Moline, Illinois, and while not physically located in either division of the Northern District of Illinois, Moline is a two-hour drive from Rockford. Therefore, the Western Division has a "nexus" to the litigation because it is reasonably close to the location where relevant witnesses and documents are located. This nexus weighs in favor of transfer to the Western Division. *See e.g.*, *In re Delphi Corp. Sec., Derivative & ""Erisa" Litig.*, 403 F. Supp. 2d 1358, 1360 (J.P.M.L. 2005) (selecting district with "a significant nexus to the litigation" because "[t]his district is where many relevant documents and witnesses are likely to be found, inasmuch as [defendant's] principal place of business is located there."); *In re: Midland Credit Mgmt., Inc., Tel. Consumer Prot. Act Litig.*, 818 F. Supp. 2d 1377, 1378 (J.P.M.L. 2011) (selecting the district with "a nexus to the allegations given the location of the defendants there, and relevant documents and witnesses likely will be found there."). The Panel has often looked to the location of a defendant's headquarters to determine the proper transferee forum. *See In re Medtronic, Inc. Spring Fidelis Leads Prods. Liab. Litig.*, MDL No. 1905, 536 F. Supp. 2d 1375, 1376 (J.P.M.L. 2008) (transferring actions to the District of Minnesota, the location of the defendant's headquarters); *see also In re Farxiga (Dapagliflozin) Prods. Liab.*

7

*Litig.*, MDL No. 2776, 273 F. Supp. 3d 1380, 1382 (J.P.M.L. 2017) (transferring actions to the Southern District of New York, the location of the defendant's headquarters).

Plaintiffs are spread across multiple jurisdictions, but the "center of gravity" for the Related Actions is the Northern District of Illinois, making it an appropriate transferee district. Given this wide geographic dispersion of the Related Actions, the Western Division in particular provides a central location accessible through a nearby major international airport. Thus, the Western Division is an appropriate and convenient forum for all parties. The Western Division's courthouse in Rockford, Illinois is a two-hour drive from Deere's Moline headquarters and approximately a one-hour drive from O'Hare International Airport in Chicago, making it a convenient forum for the parties and witnesses.

Furthermore, nearly half of the Related Actions are pending in the Northern District of Illinois. The two judges presiding over the Related Actions filed in the Northern District of Illinois have the experience and capacity to handle this complex antitrust matter. *Forest River Farms* was the first filed action and is currently pending in the Eastern Division. Three subsequently filed Related Actions—*Plum Ridge Farms, Brown*, and *Eagle Creek Farms*—were filed in the Northern District of Illinois's Western Division. Judge Iain Johnston is presiding over the Related Actions filed in the Western Division and has several years of experience serving as a Magistrate Judge for the division prior to his appointment as a District Judge in 2020. The Western District's docket is less congested compared to that of the Eastern Division, indicating that transfer to the Western Division may result in a quicker resolution of this litigation for all parties.[5] However, both judges assigned to the Related Actions in both divisions of the Northern District of Illinois are highly qualified and would be well-equipped to preside over this litigation.

---

[5] Currently, there are fourteen multidistrict litigation cases pending in the Northern District of Illinois. All fourteen are in pending in the Eastern Division. *See*

**B. Any Subsequently Filed Tag-Along Actions Should Be Transferred to the Northern District of Illinois.**

Plaintiffs anticipate that additional complaints may be filed in the coming weeks. Plaintiffs respectfully request that any such subsequently filed actions be treated as tagalong actions under Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, subject to consolidation in the same venue as these actions in order to "promote the just and efficient conduct of the cases." 28 U.S.C. § 1407.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Panel transfer the Related Actions to a single district court for consolidated or coordinated pretrial proceedings under 28 U.S.C. § 1407. Plaintiffs specifically request that the Panel order the cases transferred to and consolidated before the Western Division of the Northern District of Illinois.

Dated: March 22, 2022                           Respectfully submitted,

*/s/ Daniel C. Hedlund*
Daniel C. Hedlund
Daniel E. Gustafson
Michelle J. Looby
Kaitlyn L. Dennis
**GUSTAFSON GLUEK PLLC**
120 South Sixth Street #2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dhedlund@gustafsongluek.com
dgustafson@gustafsongluek.com
mlooby@gustafsongluek.com
kdennis@gustafsongluek.com

---

https://jpml.uscourts.gov/pending-mdls-0 (last accessed Mar. 22, 2022). Additionally, Judge Martha Pacold had eighty-eight cases pending over three years as of September 30, 2021; Judge Iain Johnston had thirty-four. *See U.S. District Courts—Civil Cases Pending More Than Three Years—as of September 30, 2021,* https://www.uscourts.gov/statistics/table/cjra-7/civil-justice-reform-act-cjra/2021/09/30 (last accessed Mar. 22, 2022).

Kenneth A. Wexler
Justin N. Boley
Tyler J. Story
**WEXLER BOLEY & ELGERSMA LLP**
55 West Monroe Street, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
kaw@wbe-llp.com
jnb@wbe-llp.com
tjs@wbe-llp.com

Adam J. Zapala
Elizabeth T. Castillo
James G. Dallal
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
jdallal@cpmlegal.com

*Attorneys for Plaintiff Forest River Farms and the Putative Class*